UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

                                    Plaintiff,            **REPORT**
                                                         **and**
and TRACY MYLES                                          **RECOMMENDATION**

                          Plaintiff-Intervenor,

        v.                                               **03-CV-670A(F)**

CONCRETE APPLIED CONSTRUCTION
TECHNOLOGIES CORP., d/b/a CATCO
CONSTRUCTION CO.

                                    Defendant.


APPEARANCES:                  MICHAEL J. O'BRIEN, ESQ.
                              Attorney for Plaintiff
                              UNITED STATES EQUAL EMPLOYMENT
                              OPPORTUNITY COMMISSION
                              33 Whitehall Street, 5th Floor
                              New York, New York 10004-2112

                              BARTLO, HETTLER & WEISS
                              Attorneys for Plaintiff-Intervenor
                              PAUL DAVID WEISS, of Counsel
                              22 Victoria Boulevard
                              Kenmore, New York 14217

                              BOND, SCHOENECK & KING, PLLC
                              Attorneys for Defendant
                              ROBERT A. DOREN,
                              MARK A. MOLDENHAUER, and
                              RICHARD A. BRADEN, of Counsel
                              40 Fountain Plaza
                              Key Center, Suite 600
                              Buffalo, New York 14202-2200

## JURISDICTION

        This case was referred to the undersigned on December 18, 2003 by the Hon.

Richard J. Arcara for all pretrial matters including a report and recommendation on

dispositive motions.  (Doc. No. 6).  The matter is presently before the court on

Defendant's motion for summary judgment, filed on October 22, 2004 (Doc. No. 30).


## BACKGROUND

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), filed this action

under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.,* and

Title I of the Civil Rights Act of 1991 ("Title I"), 42 U.S.C. § 1981a, on September 10,

2003.  Specifically, Plaintiff alleges that Defendant discriminated against Plaintiff-

Intervenor, Tracy Myles ("Myles" or "Plaintiff"), an African-American male, by not hiring

him for a position as an operating engineer because of Myles's race.  By order dated

April 26, 2004, Myles's motion to intervene was granted and, on May 6, 2004, Myles

filed a complaint ("the Intervenor Complaint"), also alleging that Defendant violated Title

VII and Title I, as well as the New York State Executive Law § 296, *et seq*.  ("the

Human Rights Law" or "NYHRL"). [1] Defendant filed its Answer on May 25, 2004.

("Defendant's Answer").

As noted, on October 22, 2004, Defendant filed its motion for summary judgment

("Defendant's Motion"), supported by a Statement of Undisputed Facts ("Defendant's

Statement of Facts"), the Affirmation of Robert A. Doren, Esq. ("Doren Affirmation"),

along with twenty exhibits ("Doren Affirmation Exh(s). ___"), the Affidavit of Michael

Salvadore, Defendant's owner, ("Salvadore Affidavit"), and a Memorandum of Law in

Support of Defendant's Motion ("Defendant's Memorandum"), along with exhibits A

---

[1] When referring to both Myles and the EEOC, the court refers to them as "Plaintiffs."

through D ("Defendant's Exh(s). ___").

In opposition to Defendant's motion, Plaintiffs filed, on November 22, 2004, a

Joint Memorandum of Law in Opposition to Defendant's Motion ("Plaintiffs' Joint

Memorandum"), accompanied by Plaintiffs' Response to Defendant's Statement of

Undisputed Material Facts, and Plaintiffs' Statement of Material Facts in Dispute

("Plaintiffs' Fact Statement"), the Affidavit of Tracy Myles ("Myles Affidavit"), the Affidavit

of Paul D. Weiss, Esq. ("Weiss Affidavit"), Plaintiffs' Rule 56.1 Appendix in Opposition

to Defendant's Motion for Summary Judgment ("Plaintiffs' Appendix"), and additional

exhibits. ("Plaintiffs' Appendix Continued").  On December 6, 2004, Defendant filed the

Reply Affirmation of Robert A. Doren, Esq. ("Doren Reply Affirmation"), along with five

exhibits ("Doren Reply Affirmation Exh(s). ___"), as well as a Memorandum of Law in

Support of Defendant's Motion for Summary Judgment ("Defendant's Reply

Memorandum"), and the Reply Affidavit of Michael W. Salvadore ("Salvadore Reply

Affidavit").  Oral argument was deemed unnecessary.  For the reasons discussed,

Defendant's motion should be DENIED.


## FACTS [2, 3]

Defendant CATCO Construction Co. ("Defendant" or "CATCO") is a contracting

company in the business of road construction and repair.  Fact Statements ¶¶ 1.

CATCO was established in 1995 by Mr. Michael Salvadore, its owner and president

---

[2] Based on Defendant's Statement of Facts (Doc. No. 31) and Plaintiff's Fact Statement (Doc. No. 41).

[3] Plaintiffs' Fact Statement and Defendant's Statement of Facts are referred to as "Fact Statements."

("Salvadore").  *Id.*  Generally, CATCO's construction season runs from March through October or November.  Defendant's Memorandum at 3; Fact Statements ¶¶ 11.  Because of the seasonal nature of the construction industry, the size of CATCO's workforce fluctuates throughout the year.  Fact Statements ¶¶ 12.  Typically, Defendant will recall or hire workers for construction projects for which it was awarded a contract based on its successful competitive bid in February or March, and, throughout the construction season, on an as-needed basis.  *Id.* ¶¶ 15.  Operating engineers, who operate heavy construction equipment, Doren Affirmation, Exh. 4 ("Myles's Deposition") at 19, are hired by CATCO as they are needed for a particular construction job based upon  recommendations from "key" CATCO employees or referrals from the Operating Engineers labor union local with which CATCO deals under a collective bargaining agreement.  *Id.* ¶¶ 17.  Specifically, Salvadore will ask "key" CATCO employees to recommend qualified individuals when the position for which CATCO is hiring is expected to be a long-term hire, but will contact the Union hall for referrals if the position to be filled is short-term in duration.  *Id.* ¶¶ 18; Salvadore Affidavit ¶ 19.  CATCO maintains it does not consider "walk-in" applicants when hiring operating engineers or laborers, nor does CATCO review written applications submitted to CATCO's corporate office upon hiring.  Fact Statements ¶¶ 19-20; Salvadore Affidavit ¶ 19.

Beginning in 1995 through April 2002, Plaintiff Tracy Myles, an operating engineer, submitted numerous applications to CATCO for possible employment.  Fact Statements ¶¶ 25.  In 1995, Joe Myles, Tracy Myles's father, spoke with Salvadore about employing his son.  *Id.* ¶¶ 26.  Subsequent to Myles's conversation with

Salvadore, Tracy Myles met twice with Salvadore, in June or July of 1995, seeking

employment, but was informed there was no work and that Myles should check back

periodically.  *Id.;* Plaintiff's Appendix ¶ 26; Defendant's Memorandum at 5.  However,

Myles submitted no further applications to CATCO in 1995.  Fact Statements ¶¶ 27.

    In the Spring of 1998, Myles again met with Salvadore, seeking employment with

CATCO.  Fact Statements ¶¶ 29.  At this time, Salvadore informed Myles that

Defendant did not have any work available.  *Id.* ¶¶ 30.  Myles inquired about

employment with CATCO again in the Fall of 1998, but Salvadore informed Myles he

would not hire him because Myles was employed by Oakgrove, another road repair

contractor.[4]  Plaintiffs' Fact Statement ¶ 90(c).  According to Myles, however, CATCO

hired Merl Schreckengost, an operating engineer who, like Myles, also worked for

Oakgrove.  *Id.*; Myles Deposition at 47-50.  Myles next met with Salvadore in the

Summer of 1999 when, while CATCO was working on a project in a Buffalo suburb

("the Transit Road Project") ("the site"), Salvadore advised Myles to return to the site

the following day to commence work.  *Id.* at 55.  However, there is no witness to this

conversation, *id.,* and when Myles returned the following day, CATCO's foreman or

superintendent on the Transit Road Project was not aware that Myles was to

commence working for CATCO.  *Id.* at 55-56.  The conversation between Myles and the

CATCO foreman or superintendent at the site was witnessed by a CATCO operating

engineer, Henry Harder, Jr.  *Id.* at 56-57.  At that time, Harder informed Myles that

Salvadore would hire Myles only if Myles was recommended by another CATCO

---

[4] The record does not identify the type of entity that Oakgrove is or its business, but from the context of the statements in which Oakgrove is mentioned, including Plaintiffs' Fact Statement ¶ 90(c), it is likely that Oakgrove is another construction company similar to CATCO.

operating engineer, stating, "I could get you in." *Id.* at 57.  Whether Harder ever recommended Myles to Salvadore for employment with CATCO at that time is not reflected in the record.  *Id.*

In early 2000 or 2001, Myles spoke with a person whom he believed was CATCO's superintendent of the Transit Road Project about employment.  Fact Statements  ¶¶ 42, 44; Myles Deposition at 60.  This person advised Myles to fill out an employment application because CATCO was expected to "be putting people on."  Fact Statements ¶¶ 43.  The name of the person with whom Myles spoke is unknown to him, and nothing in the record reflects such conversation.  *Id.* ¶¶ 44.  Myles does not recollect discussing employment with Salvadore in 2000 or 2001, and no record reflects such a conversation.  *Id.* ¶¶ 45.

In the middle or latter part of March 2002, Michael Calmes, a white operating engineer, approached Salvadore at the Transit Road Project job site and inquired whether CATCO was hiring operating engineers.  Fact Statements ¶¶ 48; Doren Affirmation Exhibit 1 ("Calmes Deposition") at 40.  At that time, according to Calmes, Salvadore stated CATCO "had a lot of work . . ., that [CATCO] would be hiring," and directed Calmes to submit an application and return to the site in a week.  Calmes Deposition at 45-47.  Calmes later told Myles that CATCO was going to be hiring several operating engineers, *id.* at 51-52, and, approximately one week after Calmes's conversation with Salvadore, Calmes and Myles went to another job site where CATCO was working ("the Broadway job site")  to inquire about employment with CATCO.  Fact Statements ¶ 52; Calmes Deposition at 72-73.  At that site, a CATCO foreman informed Calmes and Myles that CATCO would be hiring because CATCO "had a lot of work,"

but that because Salvadore was presently out of town, no hiring decision could be made at that time. Fact Statements ¶ 52; Calmes Deposition at 57. Thereafter, Myles filed, on March 29, 2002, an application for employment with CATCO's corporate office. Fact Statements ¶ 54; Calmes Deposition. On April 9, 2002, Calmes also filed an employment application with CATCO's corporate office. *Id.* ¶ 55.

Subsequently, in or about the second or third week of April, Calmes and Myles returned to the Broadway job site to inquire about employment where they met with Salvadore. *Id.* ¶ 57; Calmes Deposition at 72; Salvadore Affidavit ¶ 13. However, Salvadore told them there were no employment opportunities available at that time, and advised Calmes and Myles to accept other job opportunities if any came along. Fact Statements ¶¶ 58-59; Calmes Deposition at 75. Calmes testified that Salvadore's demeanor ("nasty") differed when he met Salvadore with Myles compared to that exhibited by Salvadore ("pleasant") when Calmes previously spoke with Salvadore alone in March of 2002 at the Transit Road job site. Doren Affirmation Exh. 1; Calmes's Deposition at 75-77; Plaintiffs' Fact Statement ¶ 59; While the precise date of the conversation during the latter part of April 2002 among Calmes, Myles and Salvadore at the Broadway job site is unclear from the record, the record shows that three white male operating engineers, Raymond Geib, John Schruise and James Scotland, were hired by CATCO at the end of March and the beginning of April 2002. Plaintiffs' Appendix Exh. J ("Equipment Operators Hired or Working In Local 17 Jurisdiction From 01/01/00 to 5/11/02") ¶ 61. According to Defendants, these operating engineers were hired upon the recommendation of employees of CATCO or referrals from Local 17, the operating engineer's Union which referred operating engineers to CATCO ("Local 17").

7

Fact Statements ¶¶ 65-67.  According to CATCO, Myles was not hired because CATCO's policy was to hire operating engineers who were recommended for long-term employment by "a current, key [CATCO] employee," or referred by Local 17, the Union, for short-term work, not applicants who, like Myles, submitted employment applications on a "walk-in" basis.  *Id.* ¶ 106.  Myles filed his EEOC Complaint on April 22, 2002.  *Id.* ¶ 47.

From January 1, 2000 until May 11, 2002, Myles was the only African-American to submit an application to CATCO who was not hired.  Doren Affirmation Exh. 9. Nineteen other individuals who submitted applications during that time were white and were also denied employment.  *Id.*  Contrary to the information provided by CATCO, *id.*, Mark George, a white operating engineer who submitted an application with CATCO on March 28, 2001, began working for CATCO on May 13, 2002.  Salvadore Affidavit ¶ 18. Raymond Geib, another white operating engineer who submitted an application for employment with CATCO in March of 2002, was "unofficially offered" a job with CATCO in February of 2002 during a conversation with Mark Werner, a CATCO employee who, according to Geib, had authority to hire individuals for Salvadore.[5]  Doren Affirmation Exh. 3 ("Geib Deposition") at 44, 66, 68.  Geib began working for CATCO on April 8, 2002, after receiving a call from Werner to report for work.  Geib Deposition at  66; CATCO Position Statement, Exh. J (Equipment Operators Hired or Working From 01/01/00 to 5/11/02).

Between January 1, 2000 and April 30, 2003, five African-Americans were hired

---

[5] Salvadore stated at his deposition that Mark Werner had authority to hire prospective employees if Salvadore told Werner to hire them.  Doren Affirmation Exh. 5 ("Salvadore Deposition") at 74.

by CATCO as either operating engineers or operating engineer apprentices.  Fact

Statements ¶¶ 97; Defendant's Memorandum at 13.  Four of these individuals were

hired before April 15, 2003[6] as short-term operating engineers and were referred to

CATCO by Local 17, while the remaining African-American, Joe N. James, Jr., hired by

CATCO on April 15, 2003 for long-term employment, was recommended by a CATCO

employee after the EEOC found, on January 13, 2003, that CATCO racially

discriminated against Myles by not hiring him.  Doren Affirmation Exh. 7;  Plaintiffs' Fact

Statement ¶ 97.  Pursuant to the terms of the Union's collective bargaining agreement

with CATCO, CATCO may hire or choose not to hire journeymen referred to it by Local

17, Salvadore Reply Affidavit ¶ 9, but CATCO must hire those Union stewards and

apprentices whom Local 17 recommends.  *Id.* ¶ 11.  Two others, Marlon Thomas and

Lee Johnson, were hired as operating engineer apprentices pursuant to the

requirement of the collective bargaining agreement and Robert Johnson and Arthur

Jones were hired upon referral by the Union as journeymen engineers.  Doren

Affirmation Exhibit 19; Defendant's Fact Statement ¶ 97; Salvadore Affidavit ¶ 16.

Between January 1, 2000 and April 30, 2003, six individuals "belonging to some

other racial minority were hired as operating engineers or operating engineer

apprentices" by CATCO.  Defendant's Fact Statement ¶ 98.  During that time, CATCO

hired 19 African-American laborers or laborer apprentices, 16 of whom were referred by

the Union, and three of whom were recommended by CATCO employees.  Fact

Statements ¶¶ 99.  Four individuals belonging to other minority groups were hired also

---

[6] Marlon A. Thomas was hired by CATCO on October 7, 1999; Robert A. Robinson was hired by
CATCO on July 23, 2001; Arthur Jones was hired by CATCO on October 4, 2001; and Lee E. Johnson, Jr.
was hired by CATCO on March 31, 2003.  Defendant's Fact Statement ¶ 97.

as laborer apprentices by CATCO during this period.  *Id.* ¶¶ 100.

## DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact.  If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment.  *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried.  *Rattner, supra,* at 209.  In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party.  *Anderson, supra,* at 255; *Rattner, supra,* at 209.  If the moving party meets its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). The nonmoving party may not rest upon unsubstantiated allegations, conclusory assertions or mere denials, but must set forth and establish specific facts showing that

there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  A metaphysical or other

whimsical doubt concerning a material fact does not establish a genuine issue requiring

trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584 (1986).

      A.      Plaintiff's *Prima Facie* Case.

Section 703 of Title VII of the Civil Rights Act of 1964 provides that "it shall be an

unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge

any individual, or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race . . . national origin . . .."  42 U.S.C. §2000e-2(a)(1) ("Title VII").  "A

plaintiff may establish a claim of disparate treatment under Title VII either (1) by

showing that he has suffered an adverse job action under circumstances giving rise to

an inference of discrimination on the basis of race, color, religion, sex, or national

origin, or (2) by demonstrating that the harassment on one of more of these bases

amounted to a hostile work environment."  *Feingold v. New York*, 366 F.3d 138, 149 (2d

Cir. 2004).  *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (observing that two

discrimination theories are available under Title VII, including disparate treatment, also

referred to as "*quid pro quo*" discrimination, and hostile work environment).  Title I of the

Civil Rights Act of 1991 provides for damages that a complaining party may collect once

it is established an employer or prospective employer intentionally discriminated against

the complainant in violation of Title VII of the Civil Rights Act of 1964.  Here, Myles

asserts he was CATCO discriminated against him based on his race in violation of Title

VII and N.Y. Executive Law § 296 (*Id.* ¶¶ 20-22), by failing to hire him.  Intervenor

Complaint (¶¶ 23-25).

The Supreme Court has developed a three part, burden-shifting analysis to be used in evaluating the evidence of intentional discrimination on summary judgment. *Texas Dep't of Comty. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green, supra,* at 802-04 (1973).  First, a  plaintiff must come forward with sufficient evidence to support a *prima facie* case of discrimination.  *McDonnell Douglas Corp., supra,* at 802.  Second, if the plaintiff meets that burden, the defendant must "articulate some legitimate, nondiscriminatory reason" for its decision.  *Id.*  Third, should the defendant carry its burden, the plaintiff must prove by a preponderance of the evidence that the reason articulated was a pretext.  *Id.* at 802-04.

To establish a *prima facie* case of discriminatory racial treatment, or in refusing to hire based on disparate treatment, a plaintiff must show that (1) he belongs to a group protected by Title VII; (2) he applied and was qualified for the job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected for employment; and, (4) the rejection occurred "in circumstances which give rise to an inference of unlawful discrimination," based on the plaintiff's race.  *Burdine, supra,* at 253; *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 (2d Cir.), *cert. denied,* 534 U.S. 951 (2001).

A plaintiff's burden to establish a *prima facie* case of employment discrimination to defeat summary judgment is *de minimus*.  *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citing cases).  A case for employment discrimination may be established based on either direct or circumstantial evidence.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) ("direct evidence of discriminatory intent [with regard to employment] is rare and such intent often must be inferred from circumstantial

evidence found in affidavits and depositions"); *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) ("Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence.").  Further, as the court may not resolve issues of fact on a summary judgment motion, its determination is limited to "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive."  *McLee*, 109 F.3d at 135.

The NYHRL prohibits employers from refusing to hire or discharging employees based on a variety of factors, including the individual's race.  N.Y. Exec. Law § 296 1-a. The standard for employment discrimination claims pursuant to NYHRL § 296 is the same for those brought under Title VII, *Cruz v. Coach Stores,* 202 F.3d 560, 565 n. 1 (2d Cir. 2000); *Calhoun v. Mastec, Inc.,* 2006 WL 2806452 * 4 (W.D.N.Y. 2006) (citing cases), and, as Myles's claims are subject to the same tests, both claims will be addressed under the Title VII analysis applicable in this Circuit.  *Id.*

In support of summary judgment Defendant contends that Plaintiffs have failed to adduce admissible evidence of a *prima facie* case of race discrimination based on Defendant's alleged failure to hire Myles between March and April of 2002. Defendant's Memorandum at 2.  Defendant further argues that even if Plaintiff could establish a *prima facie* case of discrimination, Myles failed to comply with Defendant's non-discriminatory hiring policy which, Defendant maintains, requires a recommendation from one of Defendant's existing employees for long-term employment with Defendant as an operating engineer or a Union referral for a short-term employment operating engineer job with Defendant.  *Id.*  According to Defendant,

Myles lacked either an employee recommendation or Union referral and Defendant does not consider prospective applicants for operating engineer positions based on job-seeker applications. *Id.* at 4; 18. Finally, Defendant contends Myles's admission during his deposition that Myles could not specify any factual basis for his claims in this action supports Defendant's summary judgment request. *Id.*

Specifically, Defendant argues that its employee-recommendation or Union-referral hiring policy constitutes a qualification for employment that Myles failed to satisfy, and that when Myles applied for a job he believed was available in March and April of 2002, no operating engineer openings with Defendant then existed. Defendant's Memorandum at 17-18 (citing *McDonnell Douglas*, 411 U.S. at 802). Defendant also contends that Plaintiff EEOC's investigation of Myles's administrative complaint was deficient, *id.* at 10-12, and that Plaintiffs cannot demonstrate a triable issue that Defendant's recommendation-referral hiring policy, *id.* at 27-29, or Defendant's assertion that no openings for hiring an operating engineer by Defendant in April of 2002, when Myles sought to be hired, then existed, were pretextual. *Id.* at 28-30. Finally, Defendant argues that Myles's alleged encounters with Defendant seeking employment prior to June 26, 2001 are time-barred and therefore cannot provide a basis for liability on Plaintiff's Title VII or state law claims. Defendant's Memorandum at 32-33.

In opposition, Plaintiffs argue that Defendant's failure to assert its alleged recommendation-referral hiring policy as a response to Myles's administrative charge in contrast to Defendant's use of such an alleged hiring policy in defense of Plaintiffs' claims in this action establishes a *prima facie* case and that such "after-enunciated

reasons" demonstrate Defendant's proffered reason for not hiring Myles is pretextual. Plaintiffs' Memorandum at 2-3.  Plaintiffs maintain that Myles is an African-American, and as an operating engineer and member of the Operating Engineers Union Local 17, is qualified to work for Defendant as an operating engineer.  *Id.* at 4.  Plaintiffs also rely on evidence that in March 22, 2002, Calmes, a white operating engineer and Local 17 Union member, met with Defendant's owner Salvadore at one of Defendant's job sites, discussed in a favorable manner Calmes's interest in being hired by Defendant as an operating engineer and was directed by Salvadore to make a written application for employment to CATCO and return in a week as an opening might then be available. Plaintiffs' Fact Statement ¶ 48; Defendant's Fact Statement ¶ 49.  Plaintiffs also assert that Calmes then informed Myles of his discussion with Salvadore informing Myles that Salvadore had stated that more than one operating engineer would be hired by Defendant and both Calmes and Myles returned and attempted to meet with Salvadore one week later, at another of Defendant's job sites and that Defendant's foreman on the site confirmed that Defendant would be hiring as Defendant then had "a lot of work" but that Salvadore was attending an out-of-town convention and was therefore unavailable to make a hiring decision.[7]  Doren Affidavit, Exhibit 1 (Calmes Deposition) at 57. Following that discussion, Myles filed a written application for employment with Defendant's corporate office on March 29, 2002.  Doren Affidavit, Exhibit 12 (Myles's Employment Application).  Calmes filed his application for employment with Defendant

---

[7] Defendant does not contest the admissibility of the statement by the foreman as hearsay; accordingly, the court treats Defendant's failure to object to Plaintiffs' reliance on the asserted statement as a concession that the statement constitutes an admission by an authorized agent pursuant to Fed.R.Civ.P. 801(d)(2)(D).

on April 9, 2002.  *Id.*, Exhibit 13 (Calmes Employment Application).

In this case, it is undisputed that Myles, as an African-American, is a member of a protected group.  It is also undisputed that Myles applied for a position as an operating engineer with CATCO on numerous occasions, and that he was not hired. Myles's qualifications for employment with CATCO are, however, contested by the Defendant.   Although CATCO does not dispute that Myles qualified as an operating engineer based on Myles's education and/or experience, CATCO relies on the fact that Myles was unqualified for an operating engineer position with CATCO because he was not recommended by either an employee or referred to CATCO by Local 17, nor was work available for Myles at the particular times when Myles inquired about employment with CATCO, in accordance with CATCO's hiring policies.[8]

Under Title VII, a prospective employee is "qualified" for employment  if the prospective employee meets "the criteria the employer has specified for the position." *Thornley v. Penton Publ'g,* 104 F.3d 26, 29  (2d Cir. 1997); *see also Gonzalez v. Connecticut,* 151 F.Supp.2d 174, 180-81 (finding *Thornley* applies to Title VII racial discrimination employment claims).  Although the court cannot "substitute its judgment

---

[8] Salvadore stated in his deposition that Mark Werner told Salvadore that Myles "wasn't a good operator" in 2002, but admits that these comments, made after Salvadore spoke with Calmes and Myles about employment in April 2002, were not the reason Myles was denied employment in 2002.  Doren Affirmation Exh. 5 at 88.  Salvadore also represents that in 1999 he was told by an employee, whose identity he cannot recall, that Salvadore "wouldn't be happy with [Myles's] production."  *Id.* at 89 (language added).  Plaintiffs argue that these statements are hearsay, and inadmissible under Rule 56.1. Regardless of whether Werner's statements are inadmissible hearsay, Salvadore agrees Werner's statements were immaterial to CATCO's decision not to hire Myles in April 2002, as Werner made these statements after Myles was denied employment.  Salvadore's assertion that other comments concerning Myles's work were made to him in 1999 by an unidentified employee is inadmissible hearsay for determination of this summary judgment motion.  See *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 160 (2d Cir. 1999) (plaintiff's recitation of reason Defendant "told" plaintiff he was not hired, absent affidavit corroborating plaintiff's assertion, was inadmissible hearsay not considered by the court in determining Defendant's summary judgment motion).

for that of a business judgment," a court may "look behind the employer's claim that it merely exercised a business decision in good faith." *Montana v. First Fed. Sat. and Loan of Rochester,* 869 F.2d 100, 126 (2d Cir. 1989).  Where a plaintiff can show that a prospective employer's hiring method was illegitimate, arbitrary, or relied upon in bad faith, such method may be deemed unlawful under Title VII.  *Mieri v. Dacon,* 759 F.2d 989, 995 (2d Cir. 1985).

The circumstantial evidence in the instant case presents a genuine issue of material fact that Myles was discriminated against by CATCO in its failure to hire Myles. Significantly,  CATCO has provided no evidence other than Salvadore's testimony to establish that Defendant's employee recommendation-referral hiring policy existed when Myles sought employment with CATCO.  No Union testimony of "key" or so-called "trusted employees," Defendant's Fact Statement ¶ 17, attesting to the fact that such hiring policy was in effect when Myles applied for employment in March and April, 2002 was submitted by Defendant.  Indeed, Defendant has not even identified any such"key" employees.  Further, had a recommendation-referral hiring policy been a condition precedent to employment with CATCO, Defendant fails to explain, sufficient to avoid trial, why Salvadore inquired about Calmes's work history and experience when Calmes did not meet CATCO's threshold recommendation-referral  requirement for possible employment then known and allegedly adhered to by Salvadore in making hiring decisions for CATCO.  Finally, there is also no evidence in the record indicating that Salvadore informed Calmes he needed a recommendation or referral to be considered for employment with CATCO, yet encouraged Calmes to apply for employment by making application to CATCO.

The evidence that CATCO hired operating engineers Raymond Geib and Mark George after they submitted applications to CATCO during the period in which Calmes and Myles also sought, upon similar applications, employment with CATCO may cause the trier of fact to reasonably infer that CATCO's hiring policy was not based exclusively on recommendations and referrals as Defendant maintains, but, rather, in the context of the other circumstances proffered by Plaintiffs, was a pretext to refuse employing Myles based on his race.  Moreover, CATCO's assertion that it did not hire Myles in April 2002 because it had no work available is plainly belied by undisputed evidence that, during the 2002 construction season, CATCO hired Daniel Lester on March 13, 2002; James Scotland on March 20, 2002; Raymond Geib on April 8, 2002; John Schuise on April 8, 2002; Virginia Kerr on April 10, 2002; Merl Schreckengost on May 6, 2002; Larry Pagano on May 8, 2002; and Rodney Bellinger on April 16, 2002.  While it is true, as Defendant points out, that some of these persons were either operating engineer apprentices or Union stewards required to be hired as designated by the Union, the fact that they were nevertheless hired by CATCO reasonably supports an inference that there was work available during the time period when Myles and Calmes were seeking employment with CATCO, *i.e.*, mid-March through mid to late April 2002, for which Myles was qualified but not hired.

Additionally, as noted, in response to the EEOC's investigation of Myles's discrimination in hiring complaint, CATCO did not initially contend Myles was not hired because he lacked the supposed requisite employee recommendation or Union referral. Rather, this justification was alleged by CATCO only later, upon the commencement of this lawsuit.  Though not dispositive of whether Defendant's recommendation-referral

18

policy existed when Myles sought employment with CATCO in March-April 2002, the

court finds such evidence supports an inference that the alleged hiring policy was not,

in fact, operative when Myles contacted Salvadore seeking employment with CATCO in

2002.  Moreover, that CATCO posted a sign stating CATCO does not hire walk-in

applicants *after* the EEOC found CATCO discriminated does not conclusively establish

that such policy was in existence *before* Myles filed charges of discrimination with the

EEOC. Plaintiffs' Memorandum at 17-20; Plaintiffs' Fact Statement ¶ 20.  Again, at a

minimum, a material issue of fact is presented as to whether this hiring policy existed

during the relevant time period and was relied on by Salvadore in declining to hire

Myles.  Therefore, a reasonable juror could find the CATCO hiring policy based on both

referrals and work availability was either (i) not actually in effect when Myles inquired

about employment with CATCO in March and April 2002, or (ii) merely a pretext for

discrimination by Salvadore against Myles based on his race.

Further, regardless of whether Myles was "qualified" for employment pursuant to

CATCO's alleged hiring policy, the validity of this hiring policy itself presents a material

issue of fact.  *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1016 (2d Cir. 1980)

(word-of-mouth hiring policies are permissible only when shown to be necessary to

hiring the safest, most competent workers).[9]  As discussed, *Discussion, infra,* at 26-28,

---

[9] Defendant argues that Plaintiffs' reliance on *Grant* is misplaced because, unlike Plaintiffs in the instant case, the plaintiffs in *Grant* produced independent evidence establishing a *prima facie* case of discriminatory treatment as alleged in the complaint.  Defendant's Reply Memorandum at 8.  Defendant further contends that *Grant* does not characterize all word-of-mouth hiring policies as inherently discriminatory and the use of such policies by an employer does not obviate the requirement that Plaintiffs show the adverse employment action was motivated by an intent to discriminate.  *Id.*  Although *Grant* does not classify all word-of-mouth hiring policies as inherently discriminatory, such policies will be sustained as a valid, bona fide hiring policy "only where they are necessary to insure that the safest and most competent workmen are hired."  *Grant, supra,* at 1016.  Furthermore, the necessity qualification on such word-of-mouth policies is not confined to disparate impact claims under *Grant,* as Defendant contends,

the court finds Defendant has failed, as its burden under *Grant*, to demonstrate, sufficient to avoid trial, why such a recommendation - referral hiring policy is necessary to ensure a safe, competent workforce.  Thus, if CATCO is unable to establish that its asserted referral system for hiring was necessary to its ability to conduct a safe and competent workforce, CATCO's defense that Myles was unqualified because he was not referred pursuant to CATCO's hiring policy, will be insufficient to avoid liability, based on Plaintiff's *prima facie* case, and may also be found by a reasonable juror as a pretext.[10]

Upon this record, the court finds several evidentiary elements that "give rise to an inference of unlawful discrimination" by CATCO for refusing to hire Myles based on his race.  Approximately one week following the conclusion of a one-week strike by Local 17 Operating Engineers, which occurred between April 1 and April 7, 2002, Calmes and Myles met with Salvadore at a CATCO job site to request being hired by CATCO as operating engineers but were informed by Salvadore that CATCO "didn't have any work available" for either of them.  Doren Affidavit, Exhibit 5 at 28 (Salvadore Deposition); Calmes Deposition at 75; *id.*, Myles Deposition at 67-69.  According to Calmes, Salvadore stated "he [Salvadore] didn't have anything [work] and he wasn't going to have anything."  Calmes Deposition at 75.  Calmes described Salvadore's demeanor at that encounter, toward Calmes as decidedly negative ("nasty"), in sharp

---

Defendant's Reply Memorandum at 9-10, see *Grant, supra,* at 1016 (analyzing Plaintiffs' disparate treatment claims against defendant's reliance on a word-of-mouth hiring practice) and is, therefore, applicable to Defendant's contention that Myles was not qualified for lack of compliance with the CATCO hiring policy.

[10] Defendant's reliance, Defendant's Reply Memorandum at 2-3, on the collective bargaining agreement to dispute Plaintiffs' assertion that Defendant was required to hire all operating engineers referred to it by Local 17 is a matter of interpretation for the jury at trial.

contrast to Salvadore's more hospitable demeanor when Calmes previously approached Salvadore a couple of weeks earlier, without Myles ("pleasant"), about possible employment.  *Id.* at 76.  According to Myles, Salvadore at that time stated that he didn't "have anything," and that because "[utilities are in the way [*sic*]" they (Calmes and Myles) should look for other work.  Myles Deposition at 69.  Nevertheless, after this meeting Plaintiffs learned two new white operating engineers, Larry Pagano and Mark George, Salvadore Affidavit ¶ 18, commenced employment on May 8, 2002 and May 13, 2002, respectively. *Id.*  Pagano worked for Defendant until June 14, 2002; George worked until July 26, 2002.  *Id.*  Significantly, Defendant provides no facts demonstrating any reason to believe that these jobs arose only after the encounter with Myles and Calmes based on business requirements unforeseen at that time. Salvadore's generalized assertions to the contrary, Salvadore Affidavit ¶ 18, cannot avoid trial on this material issue of fact.

Salvadore avers both of these new hires were based on recommendations of two of Defendant's then current employees, Salvadore Affidavit ¶ 18; however, no testimony by either employee corroborating Salvadore's recollection was submitted by Defendant, as Salvadore's averments asserting the recommendations were by two CATCO employees are plainly inadmissible hearsay.  In addition, another operating engineer, Raymond Geib, who had filled out an application with Defendant in March 2002 and was contacted by Defendant's foreman to start work immediately following the end of the strike on April 8, 2002, was also hired by Defendant after Myles and Calmes were turned away supposedly because no jobs were then available.  Geib Deposition at 66-67.  Defendant contends that despite the fact that Geib did not start work until after the

strike was over and may not have completed his employment form with Defendant until later, Geib was offered employment with Defendant by Werner as early as February, 2002.  Salvadore Affidavit ¶ 14; Geib Deposition at 44.  Despite Defendant's assertion that during the approximately 30 day period when Calmes and Myles had sought employment with Salvadore, Defendant had "hired all of the operating engineers as required, primarily through recall of operating engineers who had worked for the company the previous season," Salvadore Deposition ¶ 13, the record fails to support such a broad statement.  Indeed, the evidence strongly suggests that neither Geib, Pagano nor George had any previous employment with Defendant.  *See* Salvadore Affidavit ¶ 14 and 18 (stating that these three employees started working for CATCO in 2002 upon the recommendation of key CATCO employees).  A jury could reasonably find that if these engineers had previously worked for CATCO, no additional employee recommendation would have been needed.  Thus, Salvadore's suggestion that any expected operating engineer jobs had been filled by recalling previous employees is open to serious doubt.

Moreover, Salvadore does not deny he met with Calmes in March of 2002 when, according to Calmes, Salvadore advised him to apply for a job with Defendant's office indicating Defendant expected to hire operating engineers in the near future, Salvadore Affidavit ¶ 11 ("I apparently told Calmes that CATCO would be hiring operating engineers").  Nor does Salvadore deny that he also failed to inform Calmes that a recommendation by a current CATCO employee would be a prerequisite to hiring.  Nothing in the Calmes deposition, submitted by Defendant, suggests that such a requirement was even discussed by Salvadore with Calmes.  Salvadore also recalled

that Calmes and Myles met with him to discuss a job with Defendant in April 2002.

Salvadore Affidavit ¶ 11.  Salvadore does not state when after this meeting he decided

Defendant would need to hire two additional operating engineers following the end of

the strike in early April leading to the hiring of Pagano and George.  Additionally,

contrary to Defendant's assertion that the two new positions did not exist and were not

anticipated by CATCO when Myles and Calmes met with Salvadore in the third or fourth

week of April after the strike, Salvadore Affidavit ¶ 18, a reasonable juror could

conclude that, based on the direct and circumstantial evidence in the record, given the

brevity of time after the meeting (at most a week or two) with Salvadore and the hiring

of Pagano and George, such positions either existed or were sufficiently anticipated as

needed by CATCO and, therefore that at least these two positions were then available

for hiring Calmes or Myles when they met with Salvadore, or would soon become

available, and that neither Myles nor Calmes were offered a job by Salvadore because

Myles was black.

Moreover, based on Salvadore's failure to inform Calmes when he first

discussed possible employment of the asserted recommendation-referral hiring

requirement, and the absence of any evidence corroborating Salvadore's hearsay

assertion that both Pagano and George were hired based on the recommendation of

existing CATCO employees, together with the absence of any request for information

calling for such a recommendation or referral on CATCO's employment application

form, *see* Doren Affirmation Exhs. 10, 11, 12, 13, 15 & 16, a reasonable juror would

also find that both the asserted lack of any job opportunities for Myles when he met with

Salvadore in April 2002 and the lack of an employee recommendation as a *bona fide*

qualification for employment with Defendant were false.

Salvadore's direction that Calmes submit an application with CATCO upon his meeting with Salvadore seeking employment with CATCO is potentially inconsistent with CATCO's stated hiring policy which, according to Salvadore, did not consider walk-in applicants and required a recommendation by a key CATCO employee of Local 17. Salvadore Affidavit ¶ 19 ("walk-in" applications "are not reviewed by CATCO").  Further, Salvadore's questions regarding Calmes's prior employment experience and work history would have been irrelevant and thus unnecessary to CATCO's decision to hire Calmes because, at that time, Calmes did not satisfy the required employee recommendation or Union referral company hiring policy.  Whether Salvadore's questioning of Calmes regarding his work experience, Calmes Deposition at 45 ("we talked about the work done in the past") establishes a reasonable inference that Salvadore did not rely exclusively on word-of-mouth employee recommendations or Union referrals as a basis for hiring and did not, in fact, later refuse to hire Myles based on his race, is therefore an issue for the trier of fact to determine.

Defendant asserts that it does not discriminate against hiring minority operating engineers, in part, based on its hiring of 19 African-American laborers.  As Plaintiffs argue, however, Plaintiffs' Memorandum at 4, the position of laborer is, arguably, less skilled than the operating engineer position, Plaintiffs' Memorandum at 21, and, as such, CATCO may have permitted minority employment in low-level positions with, presumably, less pay,  prestige and/or authority.  Whether the position of laborer is truly less skilled and less prestigious than that of operating engineer is immaterial.  What is significant is that the responsibilities, duties and authority that accompany these

positions are different, and CATCO's hiring of African-American laborers, if, indeed, non-discriminatory, only establishes that CATCO did not discriminate in hiring African-American laborers.  The issue in this case is whether CATCO discriminated against Myles based of his race with respect to hiring him as an operating engineer.  Moreover, such evidence does not require the court to similarly find that, based on CATCO's non-discriminatory treatment with respect to its laborers, CATCO did not seek to preclude minority employment at the operating engineer level, specifically Myles.  Significantly, prior to the EEOC's finding that CATCO discriminated against Myles, the only African-American operating engineers hired by CATCO were hired to fill short-term employment positions based on a Union referral.  Doren Affirmation Exh. 7;  Plaintiffs' Fact Statement ¶ 97.  In any event, such evidence, at best for Defendant, presents a question of triable fact going to Defendant's intent to discriminate regarding the hiring of operating engineers.

As of January 13, 2003, the date the EEOC determined that CATCO discriminated against Myles, Doren Affirmation, Exh. 7 (EEOC Determination Letter), all 19 operating engineers employed by CATCO were white, and only five of 81 individuals employed by Defendant were African-American; three as laborers and two as laborer-apprentices.  Doren Affirmation Exh. 7.  Thereafter, on April 15, 2003, CATCO hired Joe N. James, Jr., the first African-American operating engineer hired by CATCO for long-term employment since at least October 7, 1999.  Fact Statements ¶¶ 97.  A reasonable juror could therefore conclude, given the absence of African-American operating engineers employed by CATCO when the EEOC issued its determination, that CATCO hired James, an African-American operating engineer, on January 13,

2003, as a response to the EEOC's charge that CATCO discriminated against Myles by not hiring him based on Myles's race and for no other reason.[11]  *See* Discussion, *supra*, at 9, n. 6.  As the burden on Plaintiff to establish a *prima facie* case of discrimination is *de minimus*, the court finds there is sufficient circumstantial evidence in the record to allow a reasonable juror to find that Defendant refused to hire Myles because he is African-American.  Thus, Myles has established a *prima facie* case of Title VII discrimination and summary judgment should be denied on this issue.[12]

B.     Plaintiffs' Evidence of Pretext.

If the plaintiff establishes a *prima facie* case of discrimination, it is the burden of the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993), *aff'd*, 90 F.3d 285 (1996).  Should the defendant carry this burden, plaintiff must be afforded an opportunity to show that the reason given is a pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998).  The plaintiff bears the ultimate burden of proving that defendant intentionally discriminated against him.  *Hicks,* 509 U.S. at 509-11; *Glidden v. County of Monroe,* 950 F.Supp. 73, 75 (W.D.N.Y. 1997).

---

[11] Although Defendant hired Robert Robinson and Arthur Jones, both blacks as operating engineers in 2001, both hires were made in accordance with CATCO's stated hiring policy of requiring Union referrals for short-term employment.  However, as Pagano and George, if not Geib, were, according to Defendant, hired based on CATCO employee recommendations, the positions they filled were by Defendant's definition long-term, and could have been filled by Myles.  Thus, Defendant's reliance on its hiring of Robinson and Jones to negate, as a matter of law, the existence of a triable issue as to Defendant's discriminatory intent is misplaced.

[12] Defendant's contention, Defendant's Memorandum at 12, that summary judgment is warranted because at his deposition Myles was unable to articulate any factual basis for his claim of discrimination is meritless.  *See Palazzo v. Corio,* 232 F.3d 38, 44-45 (2d Cir. 2000) (deposition testimony of party does not foreclose trial where evidence, other than party's subsequent affidavit, is available to prove facts at issue).

In this case, Defendant claims that Myles was not hired as an operating engineer because (i) in accordance with CATCO's asserted hiring policy, Myles was not recommended by a CATCO employee nor referred to CATCO by Local 17, and (ii) CATCO did not need operating engineers when Myles inquired about employment. Fact Statements ¶¶ 10.  Such word-of-mouth hiring policies may be considered legitimate, nondiscriminatory reasons for employment so long as they are necessary for obtaining the safest and most competent workers.  *Grant,* 635 F.2d at 1016.  As the Second Circuit stated

> subjective word-of-mouth methods, although suspect for their propensity for "masking racial bias," *Barnett v. W.T. Grant Co.*, 518 F.2d 543, 550 (4th Cir. 1975), may be upheld despite apparent favoritism of whites over blacks sufficient to constitute a *prima facie* case, *but only where they are necessary to ensure that the safest and most competent workmen are hired*.  (underlining added)

*Grant,* 635 F.2d at 1016.

Here, although CATCO purportedly relied on trusted employees as "talent scouts" to recommend employees when needed, Defendant's Memorandum at 29, nothing in the record conclusively demonstrates that such a recommendation-referral system was necessary to ensure that CATCO hired the safest, most competent workers.  In fact, it is conceivable that CATCO would hire safer, more competent operating engineers by reviewing potential employees' individual applications, such as were submitted by Calmes and Myles, rather than relying on recommendations which will incorporate the recommending employee's subjective preferences.  *Grant, supra,* at 1018 (recognition of applicant's prior safety history relevant to employers alleged desire for safety-oriented supervisors).  Based on the record, a reasonable juror could

reasonably conclude that CATCO's employee recommendation-based, or word-of-mouth, hiring policy caused CATCO to hire a less experienced, less capable and less diverse workforce.  By failing to demonstrate how CATCO's hiring system is necessary to ensure the safety and competence of its workforce, CATCO has not met its burden to show it employed a "legitimate, non-discriminatory" method for hiring operating engineers sufficient to warrant avoiding trial.  *Grant, supra,* at 1016.

Should the District Court Judge determine that Defendant sufficiently articulated a legitimate, non-discriminatory reason for the challenged adverse employment action, *i.e.*, the failure to hire Myles, Defendant nevertheless fails to show it is entitled to summary judgment as Plaintiffs have identified facts which reasonably support finding that Defendant's adverse employment action based on this hiring policy is a mere pretext for discrimination.  *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000).  CATCO maintains that its hiring practices are not discriminatory because these policies "resulted in CATCO hiring twenty-four African Americans as operating engineers and laborers between January 1, 2000 and April 20, 2003."[13]  Defendant's Memorandum at 29.  Additionally, Defendant contends it hired ten other individuals "belonging to some other racial minorities to these job classifications during this period." *Id.*  Finally, CATCO submits that although the only African-American operating engineer applicant to submit an application, Myles was one of twenty operating engineer

---

[13] Exhibits 14 and 19 to the Doren Affirmation identify equipment operators and laborers hired or employed from January 1, 2002 through April 30, 2003.  However, Arthur Jones's first day of work is noted in Exh. 19 to be October 4, 2001.  Further, Defendant, in its Memorandum of Law, repeatedly states it hired a number of minorities for operating engineer, operating engineer apprentice, laborer and laborer apprentice positions between January 1, 2000 through April 20, 2003.  Defendant fails to explain how such information, even if true, supports summary judgment; rather than evidence that Defendant has not discriminated in other employment contexts and as such, is not sufficient to avoid trial on the particular refusal to hire at issue.

applicants to CATCO between January 1, 2000 and May 11, 2002, and like those other applicants, was also not hired "based on [his] application."   Defendant's Memorandum at 29 (bracketed language added); Doren Affirmation Exh. 9.

Such assertion does not eliminate the need for trial on whether the Defendant's hiring policy was pretextual, for two reasons.  First, it is ambiguous whether one or more operators who submitted an application to CATCO were hired, but not based on such application, or whether no one who submitted applications at that time was hired by CATCO.  Second, even if none of these applicants were hired for lack of a CATCO employee recommendation or Union referral, it does not necessarily follow that Salvadore and CATCO did not use the CATCO hiring policy as an *ad hoc* justification for his failure to offer Myles a job based on Myles's race.  The record unambiguously shows that Salvadore's response to Calmes and Myles when they met to discuss a possible job was based solely on a proffered lack of work, and not the lack of a recommendation or referral.  Salvadore Affidavit ¶ 13 ("any potential opening that existed . . . [when he first spoke with Calmes] no longer existed" in mid-April).  Thus, even assuming that other job seekers, as described by Defendant, who filed written applications to CATCO were not hired such fact does not negate Plaintiffs' evidence that the CATCO hiring policy, as relied on by Defendant to avoid trial, was not the primary reason for CATCO's refusal to hire Myles.  As discussed, Discussion, *infra*, at 31-32, Defendant did not assert such justification in its initial response to the EEOC's investigation of Myles's charge.  Moreover, while Salvadore averred that both Pagano and George were recommended by CATCO employees, Salvadore Affidavit ¶ 18, Calmes's testimony that, even if this averment is correct (no affidavits by either Mr.

Harden or Mr. Werner who supposedly recommended Pagano and George, respectively, corroborating Salvadore's recollection were submitted by Defendant), that Salvadore made no reference to the need for such a recommendation during their initial discussion of a potential hiring of Calmes would permit a reasonable juror to conclude that, even if CATCO utilized such a hiring criteria, it was not consistently followed and thus, as to Myles, constituted a pretext.

Of the twenty-four African Americans CATCO hired or employed as "operating engineers and laborers" between January 1, 2002 and April 30, 2003, only one, Arthur Jones, is identified as an operator-journeyman.  Two African-American operator-apprentices, Joe N. James, Jr. and Lee E. Johnson, Jr., were hired on April 15, 2003 and March 31, 2003, respectively, well after the relevant incidents here.  The remaining African-Americans were hired or employed as laborer journeymen and apprentices. Given that the Union contract required CATCO to hire Union stewards, and the pool of apprentices from which CATCO could choose, was limited to individuals referred to CATCO by the Union, Salvadore Reply Affidavit ¶ 11, 12; Doren Reply Affirmation, Exh. 3 ("Collective Bargaining Agreement") at 27, 33-34, the only African-American operating engineer CATCO employed of its own volition during this time was Arthur Jones. Defendant's representation that it hired 24 African-American operating engineers and laborers during this time is misleading, as the representation creates the mistaken inference that the majority of the African Americans hired by CATCO filled operating engineer positions, when, in fact, Arthur Jones was the only African-American operating engineer the Union hired during that time.  In any event, as with the issues raised by Defendant, Defendant's contention invites the court to improperly weigh the evidence

on summary judgment. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (on summary judgment court does not "weigh evidence" but must "view evidence in light most favorable" to opposing party and "draw all reasonable inferences in favor of that party and eschew all credibility assessments").

Plaintiffs maintain that CATCO's hiring criteria was not confined to referrals and work availability, and CATCO's representation that Myles was not hired because he satisfied neither of these two elements is merely a pretext for discrimination. Plaintiffs' Memorandum at 3. Had CATCO hired employees only when work was available or if recommended by a key employee or the Union, Plaintiffs argue that CATCO would have identified this criteria as the basis upon which Myles was denied employment earlier, specifically, in the July 17, 2002 position statement it submitted to the EEOC in response to Myles's discrimination complaint. Plaintiffs' Memorandum at 15. Instead, Defendant initially maintained it did not hire Myles because there was no work available and the Operating Engineers' strike delayed hiring.[14] Plaintiffs' Memorandum at 14. The Second Circuit has stated

> From such discrepancies a reasonable juror could infer that the explanations given by [Defendant] were pretextual, developed over time to counter the evidence suggesting [racial] discrimination uncovered by [Plaintiff's] investigation.

*E.E.O.C. v. Ethan Allen, Inc.,* 44 F.3d 116 (2d Cir. 1994).

The court recognizes that lack of work and delay caused by the strike are not necessarily adverse to CATCO's reliance on its asserted hiring policy, however discrepancies between reasons a defendant asserts for an adverse employment action

---

[14] Defendant did not cite its employee/Union referral policy in its Answer to the EEOC's Complaint, either.

during the administrative process and those asserted in litigation have been deemed

sufficient to defeat a defendant's summary judgment motion.  *Ethan Allen, Inc.,* 44 F.3d

at 120.  *See also DeMarco v. Holy Cross High School*, 4 F.3d 166, 171 (2d Cir. 1993)

("Whether the putative, non-discriminatory purpose [in hiring or choosing not to hire]

was stated only after the allegation of discrimination" is another factor to consider in

determining whether the reasons now proffered by defendant for not hiring plaintiff are

merely pretextual.).  Although the reasons for not hiring Myles articulated by CATCO in

response to the EEOC's charge of discrimination are not facially discriminatory,

> Proof that the employer has provided a false reason for its action
> permits the finder of fact to determine that the defendant's actions
> were motivated by an improper discriminatory intent, but does not
> compel such a finding.

*DeMarco, supra,* at 170 (citing *St. Mary's Honor Ctr., supra*)).

Thus, insofar as the differing explanations may evince an improper discriminatory intent

by the employer, they should be considered by a jury.  *See De Marco, supra*.

Regardless of whether Plaintiff was referred to CATCO for employment as an

operating engineer with CATCO, Plaintiffs assert that work was available for operating

engineers when Calmes and Myles sought employment with CATCO in the second or

third week of April of 2002.  Plaintiffs' Memorandum at 19.  As noted, *Facts, supra,* at 7,

three white operators - Raymond Geib, John Schruise and James Scotland - were hired

at the end of March or beginning of April of 2002, while Larry Pagano and Merl

Schreckengost were hired in early May of 2002.  Plaintiffs' Fact Statement ¶ 60.

Additionally, Calmes testified that Salvadore told Myles in March of 2002 that CATCO

was hiring, and instructed Calmes to return in a week when work may be available.

Defendant's Memorandum at 7.  Approximately one week after his conversation with

Salvadore, Calmes returned to the Transit Road Project job site with Myles seeking

employment with CATCO, but was told by a foreman, who confirmed that CATCO

would be hiring and had work available, that Salvadore was out of town.  Defendant's

Memorandum at 7.  When Calmes returned with Myles during either the second or third

week of April of 2002, Salvadore told them that there was no work available.  *Id.* at 8.

Defendant denies that work was available when Myles sought employment with

CATCO, arguing that (i) the size of CATCO's workforce varies, depending upon the

season or particular project; (ii) once the construction season has begun, additional

employees may be needed on short-notice; (iii) Raymond Geib and Mark George were

not hired because they submitted applications with CATCO, but because they were

both recommended by CATCO employee Mark Werner; and (iv) Daniel Lester, James

Scotland, Raymond Geib and John Schruise were all hired pursuant to CATCO's

recommendation-referral policy.  Defendant's Memorandum at 3-4, 9.  Because  work

availability is an essential element of CATCO's purported hiring policy, whether work

was, in fact, available for operating engineers with CATCO when Salvadore told Myles

and Calmes during their April 2002 conversation is a material issue of fact that requires

summary judgment be denied as to this issue.  *See Amnesty America, supra*.

As additional evidence of pretext, Plaintiffs point out that it is illogical for

CATCO's superintendent on the Transit Road project site in 2000 or 2001 to have

advised Myles to fill out a job application if CATCO did not consider applications when

hiring. Fact Statements  ¶¶ 42-44; Doren  Affirmation, Exhibit 4 at 61.  If a potential

employee's application, as CATCO contends, had no bearing on CATCO's hiring

decision, a reasonable juror could infer that CATCO's job superintendent would be aware of such policy and inform Myles of CATCO's referral requirement for employment at that time. However, nothing in the record indicates that this superintendent mentioned a recommendation-based hiring policy in his conversation with Myles. Additionally, Salvadore's instruction to Calmes to submit an application with CATCO during his favorable conversation with Calmes in March 2002 at the CATCO Transit Road job site, as well as Salvadore's inquiry of Calmes's work history and experience on that date, tends to negate CATCO's assertion that any candidate who submitted an application would not be considered for employment. Plaintiffs' Memorandum at 18. Thus, a reasonable juror could conclude that if Salvadore's criteria for hiring operating engineers was, in fact, limited to referral by the Union or recommendation from a "key employee," Calmes's work history and experience would be irrelevant and Calmes did not need to fill out an application contrary to Salvadore's direction to him. As such, if the jury believes Salvadore would not have asked Calmes those questions, nor would he have instructed Calmes to submit an application had such a recommendation-referral hiring policy actually existed, the jury could also reasonably conclude that the primary reason for CATCO's failure to hire Myles at the time of their April 2002 meeting was Myles's race, and not the absence of an employee recommendation as Defendant contends.

C.    Statute of Limitations.

Finally, Defendant, in support of its motion for summary judgment, argues Myles's pre-June 26, 2001 allegations of discrimination are time-barred and, therefore, may not be considered by the court. Defendant's Memorandum at 32-33. In support,

Defendant relies on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), where the court held that unlawful employment actions occurring more than 300 days prior to filing a charge of discrimination are not actionable, even if they relate to adverse employment action which is timely.  Defendant's Memorandum at 32.

"[A] Title VII claim is time-barred if the plaintiff, after filing a charge with the appropriate state or local agency, does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-5(e)(1)).  However, employment discrimination and retaliation claims brought pursuant to NYHRL are subject to a three-year limitations period.  N.Y. Civ.Prac.L.R. § 214(2) (McKinney 2003). Thus, liability under the Myles's state claim may be predicated on conduct occurring up to three years prior to suit, or, in this case, September 10, 2000.  Nevertheless, discrete adverse employment acts occurring outside the timely filing period are properly considered as "background evidence to support the actionable claims."  *Jute*, 420 F.3d 166, 176 (2d Cir. 2005); *Morgan,* 536 U.S. at 102.  Therefore, although adverse employment actions which may have been taken by CATCO prior to June 26, 2001 are not actionable under either federal or state law by Myles, Myles may rely on prior adverse employment actions by CATCO as background evidence to support his timely claim based on CATCO's alleged failure to here Myles in 2002.

On a motion for summary judgment, it is not the province of the court to weigh the evidence submitted by the parties.  *Amnesty America, supra*, at 31; *Lashley v. Wakefield,* 367 F.Supp.2d 461, 468 (W.D.N.Y. 2005) (witness credibility and weight of evidence are issues for fact-finder at trial).  Nor is summary judgment proper where

there is sufficient circumstantial evidence "to permit an inference in plaintiff's favor."

*Cifarelli v. Village of Babylon*, 93 F.3d 47, 54 (2d Cir. 1996).  Defendant's repeated

insistence that it did not discriminate against Myles in refusing to hire him because

Defendant has hired other African-Americans calls upon the court to improperly weigh

the evidence on the question of Defendant's alleged discriminatory motive.  Plaintiffs

have identified admissible evidence in the record which "reasonably supports a finding

of prohibited discrimination," *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d.

Cir. 2000), and as CATCO has not proffered a legitimate, nondiscriminatory reason for

its asserted recommendation-referral hiring policy sufficiently to avoid trial on this issue,

Defendant's motion for summary judgment should be DENIED.


## **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment should be

DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: June 28, 2007
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      June 28, 2007
            Buffalo, New York